IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| MENION SAMUELS,<br>Institutional ID No. 65190,<br><br>Plaintiff,<br><br>v.<br><br>RICK BISHOP, *et al.*,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 1:26-CV-00065-BU |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Menion Samuels, an inmate at Texas Department of Criminal Justice (TDCJ) Clements Unit, brings this action against Defendants Rick Bishop, Angel Gonzales, and Taylor County (collectively, "the Defendants"), alleging that they violated his constitutional rights. Samuels' claims are subject to judicial screening under 28 U.S.C. §§ 1915, 1915A because Samuels has been granted leave to proceed *in forma pauperis*, Dkt. No. 6, and he sues government officials, *see* Dkt. No. 1. For the reasons below, the Court should DISMISS Samuels' claims with prejudice for failure to state a claim.

## I. JURISDICTION

Samuels brings his claims under 42 U.S.C. § 1983, providing the Court with subject-matter jurisdiction under 28 U.S.C. § 1331. Dkt. No. 2. Venue is proper in the Northern District of Texas, Abilene Division, because Samuels' claims arise from his detention at Taylor County Detention Center (TCDC) located in Taylor County, Texas. 28 U.S.C.

§ 1391(b)(2). The undersigned has the authority to enter these Findings, Conclusions, and Recommendations after United States District Court Judge James Wesley Hendrix transferred Samuels' case to the undersigned for preliminary screening. Dkt. No. 7; 28 U.S.C. § 636(c)(1). Samuels has not consented to the undersigned exercising the full jurisdiction of this Court.

## II. FACTUAL BACKGROUND

For purposes of screening a plaintiff's complaint under 28 U.S.C. §§ 1915(e)(2)(B) or 1915A, a court must accept well-pleaded factual allegations as true and construe them in a way that most favor the plaintiff. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017). A court may look to the plaintiff's allegations in their complaint, responses to a questionnaire, authenticated prison or jail records, and testimony provided at a *Spears* hearing. *See Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *see also Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may consider authenticated medical and prison records).

Samuels' claim arises from his detention at TCDC, although he was later transferred to the TDCJ Clements Unit. Dkt. Nos. 1 at 1, 4; 16. Samuels alleges that the electronic law library provided at TCDC was inadequate, as it offered no access to Lexis or WestLaw; instead, the kiosk provided a service called "Authority Check." Dkt. No. 1 at 4, 6. Samuels also alleges that the kiosk would only return cases with guilty verdicts, even when searching specifically for acquittals. *Id.* at 4. Samuels also contacted the courthouse law library, but was informed that the assistants there were not allowed to offer legal advice, and could only help him if he knew the exact book or code he wanted. Dkt. Nos. 1 at 4; 18 at 3.

Samuels alleges that he needed legal assistance for his ongoing criminal case, where he was charged with continuous assault of a child. Dkt. No. 18 at 3. He alleges that the prosecution failed to prove the "continuous" element of the offense, which requires that the assault take place over at least thirty days.[1] Samuels claims that, although the testimony of the victim and a state witness established a timeline of at most two weeks,[2] the District Attorney argued to the jury that the offense occurred over a ten-month period. Dkt. No. 18-1 at 1–2. Samuels claims that his court-appointed attorney, Amos W. "Trey" Keith, refused to have the victim's video testimony admitted as evidence to be used on appeal, telling Samuels that he could represent himself if he wanted to. *Id.* at 2. Mr. Keith also did not object to the District Attorney's claim about the ten-month assault. *Id.*

Samuels does not allege that the law library prevented him from filing a lawsuit or appeal or caused him to miss a filing deadline. Dkt. No. 18 at 2. In fact, he notes that he has an appeal filed in his criminal case and been appointed appellate counsel, attorney Fredrick Dunbar. Dkt. Nos. 18 at 3; 18-1 at 1.[3] Instead, he argues that he was unable to articulate his claims because he lacked case law to support his position. Dkt. No. 18 at 2. Because he could not quote favorable case law, he alleges that he was at a disadvantage, and denied the constitutional right to access beneficial case law. *Id.* at 1. He claims that his inability to access beneficial case law led to his life sentence without parole. *Id.*

[1] TEX. PENAL CODE ANN. § 21.02(b).

[2] State witness Jeniffer Sillemon testified that he "never came around until the very end of Nov. 2017." Dkt. No. 18-1 at 1. The alleged victim, D'Asia Boone, testified on video and on the stand that Samuels stopped coming once her little sister was born, which occurred on December 7, 2017. *Id.*

[3] Review of the Taylor County court record indicates that Samuels' appeal was dismissed on June 25, 2026, because his appointed counsel failed to timely file a notice of appeal. *Samuels v. State*, No. 11-26-00057-CR, 2026 WL 1825832, at *1 (Tex. App. June 25, 2026).

## III. THE PARTIES

Samuels names three defendants in his Complaint: Sheriff Rick Bishop, Chief Jail Administrator Angel Gonzales, and Taylor County. Dkt. No. 1 at 3. Samuels also claims that the district attorney failed to ensure a fair criminal trial. Dkt. No. 18 at 4. Independent review of the record indicates that the Taylor County District Attorney is Bryan G. Hall. However, Samuels' claims against DA Hall cannot be asserted under § 1983.[4]

Samuels raises claims of ineffective counsel against his state-appointed attorney, Amos W. "Trey" Keith, and could raise a similar claim against appellate counsel Fredrick Dunbar for failure to timely file a notice of appeal. However, neither claim may be asserted under § 1983. "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotations omitted). And the Supreme Court has held that state-appointed counsel and public defenders are not state actors.[5] This

---

[4] Samuels claims that DA Hall (1) falsely argued to the jury that Samuels committed sexual assault over a ten-month period, and (2) failed to investigate key facts underlying the case. Dkt. No. 18-1 at 1.

The first of these claims is barred by absolute prosecutorial immunity. Prosecutors, including district attorneys, enjoy absolute immunity for conduct within the "scope of [their] duties in initiating and pursuing a criminal prosecution." *Singleton v. Cannizzaro*, 956 F.3d 773, 779 (5th Cir. 2020) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976)) (internal quotations omitted). This immunity applies to conduct comprising the prosecutor's "role as an advocate for the State," which includes actions taken "in preparation for the initiation of judicial proceedings or for trial," but does not apply to the prosecutor's "administrative duties and investigatory functions." *Id.* at 779–80 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). DA Hall's arguments to the trial jury clearly comprise part of his role as a State advocate during trial.

The second of these claims comprises an investigate function of the prosecutor, and is thus not barred by absolute prosecutorial immunity. But the Fifth Circuit has found that there is no basis under § 1983 to sue a prosecutor for an unreasonable investigation. *See Shields v. Twiss*, 389 F.3d 142, 150–51 (5th Cir. 2004) ("Regarding Shields's 'unreasonable investigation' claim, Shields has pointed to no legal basis for a § 1983 action of this sort, and the court knows of none. Hence, this claim also fails.").

[5] *Polk Cnty. v. Dodson*, 454 U.S. 312, 324–25 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Amir-Sharif v. Dallas Cnty. Pub. Defs. Off.*, 233 F. App'x 364, 365 (5th Cir. 2007) ("appointed counsel and the public defender . . . are not state actors for § 1983 purposes").

§ 1983 claim is not the proper vehicle to assert potential claims against Samuels' attorneys.

## IV. LEGAL STANDARDS

A court must dismiss a complaint filed *in forma pauperis* or filed by a prisoner against a government entity or employee if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly, it lacks an arguable basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Dismissal for failure to state a claim—whether under Section 1915(e)(2)(B)(ii), Section 1915A(b)(1), or Rule 12(b)(6)—"turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)). Thus, if a plaintiff "plead[s] facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief, the claims should not be dismissed merely because the plaintiff fails to articulate the proper legal theory that otherwise makes those facts actionable in court. *Johnson*, 574 U.S. at 11–12 (citing Fed. R. Civ. P. 8(a)(2)–(3), (d)(1), (e)).

Courts accept *well-pleaded* factual allegations as true. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). This means the factual allegations, while not required to be detailed, must amount to more than mere labels, conclusions, or a statement of the legal elements of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Chhim*, 836 F.3d at 469.

For claims to be substantively plausible, a plaintiff need not establish that the pleaded facts probably occurred as alleged, but the facts must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678–679). Even pro se plaintiffs must plead facts that raise the right to relief above a speculative level. *Chhim*, 836 F.3d at 469 (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). And when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When evaluating a complaint under these standards, courts liberally construe the pleadings of pro se plaintiffs, holding their complaints to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). But "liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*,

No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Ultimately, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

**V. ANALYSIS**

Liberally construing Samuels' pleadings, he asserts that the defendants violated his First Amendment right to access the court due to the inadequate prison law library available at TCDC. Specifically, Samuels alleges that because he could not find beneficial case law through the prison kiosk system, he was unable to articulate his claims and put at a disadvantage during his criminal trial. Dkt. No. 18 at 1–2.

Under the Fourteenth Amendment, failure to provide legal materials through a prison library may violate a prisoner's right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 828 (1977). However, access to a law library is not a freestanding right, but instead a component of the right to due process; said right "encompasses only 'a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.'" *Johnson v. Rodriguez*, 110 F.3d 299, 310–11 (5th Cir. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 356 (1996)). In addition, an inmate does not have a right to a law library if he is provided court-appointed counsel or a public defender. *Dickinson v. TX, Fort Bend Cnty.*, 325 F. App'x 389, 390 (5th Cir. 2009) ("Because Dickinson had court-appointed counsel to represent him, he did not have a constitutional right of access to a law

library to prepare his criminal defense."); *Caraballo v. Fed. Bureau of Prisons*, 124 F. App'x 284, 285 (5th Cir. 2005) ("Because Caraballo had court-appointed counsel on appeal, he had no constitutional right of access to a law library in preparing his defense[.]").

In order to bring a Fourteenth Amendment claim based on access to the courts, a prisoner must show that they suffered actual injury. In this context, actual injury requires a showing of "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348. In addition, the "injury requirement is not satisfied by just any type of frustrated legal claim[;]" it must arise specifically from (1) a direct appeal of his criminal conviction, (2) a habeas petition, or (3) a civil rights action under § 1983. *Id*. at 354–55.

Here, the undersigned finds that Samuels has not plausibly alleged a Fourteenth Amendment claim based on TCDC's law library. First, Samuels concedes that he was appointed an attorney both during trial and on his criminal appeal. Dkt. Nos. 18 at 3; 18-1 at 1–2. Because Samuels was represented by court-appointed counsel, it was not necessary for TCDC to also provide a law library to satisfy Samuels' right to access the courts.

Second, even assuming that Samuels was entitled to a law library, he has not plausibly alleged that he suffered actual injury. He alleges that his inability to dispute that the thirty-day element of continuous assault of a child arose from his counsel's refusal to present specific evidence or contest the DA's characterization of the evidence, not from a lack of beneficial case law to support his position. Dkt. No. 18-1 at 2. And he does not claim that the law library prevented him from bringing an appeal; in fact, he notes that he does

have a pending appeal. *Id.* at 1.[6]

Samuels also cannot base his access to courts claim on his inability to raise a prospective civil rights claim. Samuels argues that the criminal charge against him was unconstitutional, but that he was unable to clarify or express his position because he could not find case law to specify what his claim was. Dkt. No. 18 at 2. According to the public docket of the 104th District Court, Samuels was convicted on February 12, 2026. Because the statute of limitations for a § 1983 claim is two years from the date the cause of action accrues, Samuels is still able to assert § 1983 claims arising from his allegedly unconstitutional conviction.[7] The condition of the law library at TCDC does not obstruct such a claim, as Samuels was transferred from TCDC to Middleton Unit. Dkt. No. 13.[8]

In conclusion, Samuels has failed to plausibly allege that he was denied sufficient legal materials to access the courts, as he was provided legal counsel through his criminal trial and for his appeal. Samuels has also failed to plausibly allege that the TCDC law library caused him actual injury, as neither his conviction at trial nor the subsequent

---

[6] Samuels' appeal was dismissed on June 25, 2026, but only because his appellate counsel failed to file a timely notice of appeal. *Samuels v. State*, No. 11-26-00057-CR, 2026 WL 1825832, at *1 (Tex. App. June 25, 2026). Regardless, this dismissal did not arise from the inadequacy of the law library at TCDC.

[7] Section 1983 does not include a statute of limitations. 42 U.S.C. § 1983. Instead, the Supreme Court determined that the general statute of limitations of the forum state for personal injuries governs § 1983 claims. *Owens v. Okure*, 488 U.S. 235, 239 (1989). In Texas, a plaintiff has two years from the time his claims accrue to file a personal injury claim, including a claim filed under § 1983. *Balle v. Nueces Cty., Texas,* 952 F.3d 552, 556 (5th Cir. 2017) (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a)). And "[u]nder federal law, the [limitations] period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Russell v. Bd. of Trustees,* 968 F.2d 489, 493 (5th Cir. 1992) (quoting *Helton v. Clements,* 832 F.2d 332, 335 (5th Cir. 1987)). Here, the date of accrual arose sometime during Samuels' prosecution in February 2026; his claim would not expire until February 2028.

[8] Samuels claims that he was also denied law library access while at Middleton Unit, where he was held from March 2026 to June 2026. Dkt. Nos. 14, 16. Because he can still file a § 1983 claim based on his trial and conviction, this latter denial has not prevented him from asserting a claim.

dismissal of his appeal arose from the unavailability of case law through the prison law library. The undersigned therefore concludes that Samuels has not plausibly alleged a denial of due process under the Fourteenth Amendment from inadequate legal materials.

## VI. LEAVE TO AMEND

Still, there is the issue of whether the Court must give Samuels leave to amend his complaint. Generally, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). Leave to amend is not required, however, where an amendment would be futile, in other words, the amended complaint would still fail to state a claim, *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014), or where a plaintiff has already received an opportunity to amend his or her claims, *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 556 (5th Cir. 2007).

Here, the undersigned finds that leave to amend should not be granted. Samuels has supplemented his Complaint through his responses to the undersigned's Questionnaire. Dkt. No. 18. Samuels' pleadings indicate definitively that he was represented throughout his criminal trial, and that the outcome of the prosecution did not arise from the adequacy of the TCDC law library. His pleadings also indicate that any potential claims against the prosecutors and his state-appointed counsel are not properly asserted as § 1983 claims. The undersigned concludes that further leave to amend would be futile.

## VII. CONCLUSION

For the reasons above, the undersigned RECOMMENDS that the Court DISMISS Samuels' claims against all defendants with prejudice for failure to state a claim.

## VIII. RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendations must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendations where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IX. TRANSFER OF CASE

Having completed the preliminary screening of Samuels' claims, the undersigned ORDERS that this case be TRANSFERRED back to the docket of the United States District Judge and designated as Civil Action No. 1:26-CV-00065-H.

ORDERED this 20th day of July 2026.

JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE